Argued and submitted September 10, 1998, decision of Court of Appeals and judgment of circuit court reversed in part and affirmed in part; case remanded to circuit court for further proceedings April 8, 1999

Daniel LOURIM,
*Petitioner on Review,*

*v.*

John SWENSEN,
*Defendant,*

*and*

CASCADE PACIFIC COUNCIL,
Boy Scouts of America,
an Oregon non-profit corporation;
and the Boy Scouts of America,
a congressionally chartered corporation,
authorized to do business in Oregon,
*Respondents on Review.*

(CC C95-1000CV; CA A92903; SC S44383)

977 P2d 1157

Kelly Clark, Lake Oswego, argued the cause and filed the brief for petitioner on review.

Thomas Christ of Mitchell Lange & Smith, Portland, argued the cause and filed the brief for respondents on review.

David Slader, Portland, argued the cause for *amici curiae* Oregon Trial Lawyers Association, Oregon Coalition Against Domestic and Sexual Violence, National Alliance of Sexual Assault Coalitions, and National Association of Counsel For Children. With him on the brief was Michael S. Morey.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

GILLETTE, J.

---

** Leeson and Riggs, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This case arises out of allegations by plaintiff that he was sexually abused by his Boy Scout leader, Swensen, approximately 30 years earlier, when plaintiff was a minor. In 1995, plaintiff brought the present action against Swensen as well as the Cascade Pacific Council and Boy Scouts of America (collectively, the Boy Scouts), claiming that Swensen had sexually abused him from 1965 until 1967. As against the Boy Scouts, the complaint alleges that the Boy Scout organizations are vicariously liable for Swensen's tortious conduct under the doctrine of *respondeat superior* and that the Boy Scouts are directly liable to plaintiff for negligently failing to have implemented a screening program to prevent child abusers from becoming Boy Scout leaders.

The Boy Scouts moved, under ORCP 21, to dismiss the action on the grounds that both claims are time-barred and that the complaint fails to state ultimate facts sufficient to constitute a tort claim for vicarious liability based on the doctrine of *respondeat superior*.[1] The trial court granted the motion as to both claims. Plaintiff appealed.

On appeal, the Court of Appeals affirmed the decision of the trial court. *Lourim v. Swensen*, 147 Or App 425, 936 P2d 1011 (1997). That court concluded that plaintiff's direct liability negligence claim is time-barred, because the complaint fails to allege conduct "knowingly allowing, permitting or encouraging child abuse" by the Boy Scouts as required by ORS 12.117(1) *Id.* at 444. The court further held that the complaint contains no facts from which it reasonably could be concluded that Lourim's sexual assaults on plaintiff were within the scope of his employment. *Id.* at 438. In light of those holdings, the court did not consider whether the *respondeat superior* claim also is barred by the applicable statute of limitations. *Id.*

Plaintiff seeks review of the Court of Appeals' decision only insofar as it affirmed the trial court's order with respect to the dismissal for failure to state a claim based on *respondeat superior*. For the reasons that follow, we conclude

---

[1] Swensen ultimately settled all claims with plaintiff.

that the allegations contained in the amended complaint pertaining to the claim for vicarious liability against the Boy Scouts based on *respondeat superior* are sufficient to withstand an ORCP 21 motion to dismiss. We therefore reverse the decision of the Court of Appeals to that extent. We also hold that plaintiff's claim is not, on the record before us, time-barred as a matter of law.

■    ORCP 18 A requires that a complaint contain "[a] plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition." In determining the sufficiency of plaintiff's complaint, we accept all well-pleaded allegations of the complaint as true and give plaintiff the benefit of all favorable inferences that may be drawn from the facts alleged. *Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 196-97, 935 P2d 411 (1997). Conclusions of law alone, however, are insufficient. *See Zehr v. Haugen*, 318 Or 647, 655-56, 871 P2d 1006 (1994) (allegations in complaint do not state ultimate facts sufficient to state a claim for breach of warranty despite inclusion of such conclusory terms as "warranty agreement").

The following facts are alleged in the complaint. From 1965 to 1967, Swensen was a volunteer Boy Scout leader, duly authorized by the Boy Scouts to act as such. As part of his volunteer duties with the Boy Scouts, he was directed to fulfill the role of troop leader or assistant troop leader to plaintiff's troop. Plaintiff and his family became close to Swensen, and Swensen was a frequent guest in their home. Swensen gained the trust and confidence of plaintiff's family as a suitable friend, guide, mentor, and role model to plaintiff, then an adolescent. By virtue of that relationship, Swensen gained the support, acquiescence, and permission of plaintiff's family to spend substantial periods of time alone with plaintiff.

Swensen also won the friendship and admiration of plaintiff himself. He was his mentor and role model. Swensen gained the opportunity to socialize with plaintiff and to spend time alone with him and together with other boys in remote places. Swensen also used his position of trust to gain the

opportunity to touch plaintiff physically. Eventually, Swensen committed a series of sexual assaults on plaintiff. At the time of those assaults, plaintiff was a minor.

The complaint describes Swensen's performance of his duties as troop leader in developing a trust relationship with plaintiff and his family, together with the eventual sexual assaults, as "[m]anipulations." Plaintiff alleges in the complaint that the manipulations were committed in connection with Swensen's performance of his duties as troop leader:

> "The [m]anipulations * * * were committed within the time and space limits of his responsibilities as troop leader, were committed out of a desire, at least initially and partially, to fulfill his duties as troop leader, and were generally actions of a kind and nature which Swensen was required to perform as troop leader."

A complaint is sufficient to state a claim for vicarious liability based on the doctrine of *respondeat superior* if the allegations that it contains, if true, would establish that the employee's acts were committed within the scope of his or her employment. *Stanfield v. Laccoarce*, 284 Or 651, 588 P2d 1271 (1978). In *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988), this court set out three requirements that must be met to establish that an employee's conduct was within the scope of employment: (1) the conduct must have occurred substantially within the time and space limits authorized by the employment; (2) the employee must have been motivated, at least partially, by a purpose to serve the employer; and (3) the act must have been of a kind that the employee was hired to perform. Applying that framework in this case, the Court of Appeals held that the complaint failed to state a claim, because

> "[t]here simply are no allegations of fact that satisfy all three of the elements of vicarious liability. In particular, there are no facts from which it reasonably could be concluded that Swensen's sexual assaults were acts 'of a kind [an] employee was hired to perform.' "

*Lourim*, 147 Or App at 438 (*quoting Stanfield*, 284 Or at 655).

In *Fearing v. Bucher*, 328 Or 367, 977 P2d 1163 (1999), we addressed whether a complaint against the Archdiocese of Portland in Oregon (Archdiocese) for vicarious liability for a priest's acts of child abuse was sufficient to state a claim. The allegations contained in that complaint were not materially different from those in plaintiff's complaint here. The Court of Appeals in *Fearing* relied on the same reasoning that it employed in the present case to affirm the trial court's order dismissing the claim. In that case, we held that, in the intentional tort context, it usually is inappropriate for the court to base its decision regarding the adequacy of allegations supporting a claim for vicarious liability based on the doctrine of *respondeat superior* on whether the intentional tort *itself* was committed in furtherance of any interest of the employer or involved the kind of activity that the employee was hired to perform. We held that the proper focus rather was whether the complaint contained sufficient allegations of employee conduct that arguably *resulted in* the acts that led to plaintiff's injury. We concluded that a jury reasonably could infer that the priest's conduct in cultivating a trust relationship with the plaintiff was motivated, at least in part, by a desire to further the interests of the Archdiocese, that that conduct was of a kind that the priest was hired to perform, and that that conduct led to the sexual assaults. Accordingly, we held that the complaint was sufficient to state a claim for vicarious tort liability based on the doctrine of *respondeat superior*, and we reversed the decision of the Court of Appeals. 328 Or at 377-79.

■    The same is true in the present case. Accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, a jury reasonably could infer that the sexual assaults were merely the culmination of a progressive series of actions that involved the ordinary and authorized duties of a Boy Scout leader. Additionally, a jury could infer that, in cultivating a relationship with plaintiff and his family, Swensen, at least initially, was motivated by a desire to fulfill his duties as troop leader and that, over time, his motives became mixed. A jury also reasonably could infer that Swensen's performance of his duties as troop leader with respect to plaintiff and his family was a necessary precursor to the sexual abuse and that the assaults were

a direct outgrowth of and were engendered by conduct that was within the scope of Swensen's employment. Finally, a jury could infer that Swensen's contact with plaintiff was the direct result of the relationship sponsored and encouraged by the Boy Scouts, which invested Swensen with authority to decide how to supervise minor boys under his care. Based on the foregoing, we conclude, as we did in *Fearing*, that the amended complaint contains allegations sufficient to satisfy all three *Chesterman* requirements. The Court of Appeals erred in concluding otherwise.

■ Notwithstanding that conclusion, the Boy Scouts argue that dismissal of the complaint is proper on a ground not considered by the Court of Appeals and not present in *Fearing*. They assert that the doctrine of *respondeat superior* is premised on the existence of a master-servant relationship which, they argue, is not adequately alleged in the present complaint. For the following reasons, we disagree.

■■ It is well established that one can be a servant even though the service is performed gratuitously.[2] *Kowaleski v. Kowaleski*, 235 Or 454, 458-59, 385 P2d 611 (1963). The relevant inquiry in determining whether a master-servant relationship exists for *respondeat superior* purposes is whether the master has the right to control the actions of the servant. *Id.* at 458-59. Therefore, in evaluating the sufficiency of plaintiff's *respondeat superior* claim, we must determine whether plaintiff adequately has alleged that the Boy Scouts had the right to control Swensen's actions.

The complaint alleges that, "[a]t all relevant times, Swensen was a volunteer Boy Scout leader, duly authorized by the Boy Scouts and the Cascade Pacific Council to act in that capacity" and that, "[a]s part of his volunteer duties with the Boy Scouts and the Cascade Pacific Council, Swensen was directed to fulfill the role of troop leader or assistant troop leader to [plaintiff's] troop." Again, for the purpose of ruling on the Boy Scouts' ORCP 21 motion to dismiss, we accept those allegations as true and give plaintiff the benefit

---

[2] Moreover, although the doctrine of charitable immunity historically protected charitable institutions from vicarious liability for the torts of their servants, that doctrine was abolished in *Hungerford v. Portland Sanitarium*, 235 Or 412, 416, 384 P2d 1009 (1963).

of all reasonable inferences that may be drawn from those allegations.

A jury reasonably could infer from the allegation that "Swensen was directed to fulfill the role of troop leader or assistant troop leader to [plaintiff's] troop" (emphasis added) that the Boy Scouts directed his activities and, thus, that the Boy Scouts had the right to control Swensen's activities as troop leader or assistant troop leader.[3] In this regard, although the complaint does not contain a specific allegation setting forth the typical duties of a troop leader or what, specifically, Swensen was directed to do as a Boy Scout leader, such an allegation is unnecessary. It is sufficient, we believe, that the complaint alleges that Swensen did certain acts while acting as a Boy Scout leader and that the plaintiff was injured while Swensen was acting in that capacity. The connection between the two fairly may be inferred. Other inferences might be drawn instead, but that is a matter for the trier of fact. *Stanfield*, 284 Or at 655. We hold, therefore, that the complaint is sufficient to state a claim against the Boy Scouts for liability based on the doctrine of *respondeat superior*.

■    We turn to the issue not addressed by the Court of Appeals: The timeliness of the action under ORS 12.117. That statute provides:

"(1)   Notwithstanding [statutory sections not relevant here], an action based on conduct that constitutes child abuse or conduct knowingly allowing, permitting or encouraging child abuse accruing while the person who is entitled to bring the action is under 18 years of age shall be commenced not more than six years after the person attains 18 years of age, or if the injured person has not discovered the injury or the causal connection between the injury and the child abuse, nor in the exercise of reasonable care should have discovered the injury or the causal connection

---

[3] The Boy Scouts cite several cases from other jurisdictions in which courts have concluded that neither the Boy Scouts nor the regional councils *in fact* have the right to control the activities of individual troop leaders. Those cases are irrelevant to the present inquiry, because they all were decided after the presentation of evidence on the subject of control. As noted, our review of the matter is confined to the allegations in the complaint and the reasonable inferences that may be drawn from them. We do not speculate whether plaintiff ultimately might be able to prove the existence of a right of control on the part of the Boy Scouts.

between the injury and the child abuse, not more than three years from the date the injured person discovers or in the exercise of reasonable care should have discovered the injury or the causal connection between the child abuse and the injury, whichever period is longer.

"(2)  As used in subsection (1) of this section, 'child abuse' means any of the following:

"* * * * *

"(c)  Sexual abuse, as defined in ORS chapter 163, when the victim is a child."

The Boy Scouts argue that, in the event that we hold that the vicarious liability claim is adequately pled, we should remand the case to the Court of Appeals for consideration of the proper interpretation of the foregoing statute. Remand for that purpose is unnecessary, however, because we addressed that precise issue in *Fearing*. In that case, under circumstances very similar to those presented here, we held that the complaint, seeking damages against the Archdiocese for injuries that the plaintiff suffered 20 years previously arising out of sexual abuse committed by a priest, was not time-barred as a matter of law. Although liability in the Archdiocese was based on the doctrine of *respondeat superior*, we concluded that the action was one "based on conduct that constitutes child abuse," because the Archdiocese would be liable, if at all, for damages for injuries suffered as a result of the child abuse. 328 Or at 378-79. Accordingly, ORS 12.117 effectively extended the statute of limitations to three years from when the plaintiff discovered the causal connection between the child abuse and his injuries.

Similarly, plaintiff's claim for vicarious liability against the Boy Scouts is not, on the record before us, time-barred as a matter of law. At this point in the proceedings, it is undisputed that Swensen's alleged sexual assaults constitute "child abuse" within the definition of that term in ORS 12.117(2)(c) and that the complaint alleges that the action was brought within three years of plaintiff's discovery of the causal connection between the child abuse and his injuries.[4]

---

[4] The Boy Scouts did assert in the Court of Appeals that the allegation in the complaint that "[o]n or about April 1994 plaintiff discovered the causal connection between the Assaults and the damages he suffered as a result of the Assaults" was

As in *Fearing*, the fact that the Boy Scouts' liability is vicarious and based on the doctrine of *respondeat superior* does not alter our conclusion that the action is one "based on conduct that constitutes child abuse" and, therefore, is subject to the extended statute of limitations set out in ORS 12.117.

In the Court of Appeals, the Boy Scouts argued that application of the extended limitations period in ORS 12.117(1) to claims that a defendant is vicariously liable for abuse perpetrated by someone else would render surplusage that part of the statute that applies to "conduct knowingly allowing, permitting or encouraging child abuse," because an action based on conduct allowing or permitting child abuse also is an action "based on" child abuse. Instead, the Boy Scouts advocated an interpretation of the phrase, "an action based on conduct constituting child abuse," that would extend the statute of limitations only for actions directly against the alleged perpetrator.

In interpreting a statute, this court employs the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). At the first level of our analysis, we look at the text of the statute, in context, giving words of common usage their plain, natural, and ordinary meaning. *Id.* at 610-11. An action for vicarious liability that alleges that an employee committed child abuse is an "action based on conduct that constitutes child abuse" under a plain, natural, and ordinary meaning of that phrase. The Boy Scouts' interpretation, by contrast, "omits what has been inserted," in violation of the statutory directive found in ORS 174.010. Additionally, as contextual support, we note that there is no explicit reference to a statute of limitations for actions for vicarious liability based on the doctrine of *respondeat superior*. The limitations period is the same as that for the underlying tort.

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.

---

a legal conclusion and not a statement of ultimate fact. We disagree. Whether plaintiff actually discovered the connection in April 1994 or at some other time is a question of fact, to be proved or disproved at trial.