Argued and submitted October 30, 1996, affirmed April 16, 1997

Steven FEARING,
*Appellant,*

*v.*

Melvin BUCHER
and Archdiocese of Portland in Oregon,
*Respondents,*

*and*

PROVINCE OF ST. BARBARA,
Order of Friars Minor, a California corporation,
and Franciscan Friars of California,
*Defendants.*

(9412-08665; CA A89144)

936 P2d 1023

Kelly Clark argued the cause and filed the briefs for appellant.

Karen O'Kasey argued the cause for respondent Archdiocese of Portland in Oregon. With her on the brief were Thomas V. Dulcich and Schwabe, Williamson & Wyatt.

Arden E. Shenker waived appearance for respondent Melvin Bucher.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

This is an action for damages arising out of allegations that plaintiff's former priest sexually assaulted him when plaintiff was a child, over 20 years ago. Plaintiff sued the priest, defendant Melvin Bucher, for the assaults. He also sued Bucher's order, the Franciscan Friars of California, and the Archdiocese of Portland (Archdiocese), on theories of *respondeat superior* and negligent retention, supervision and training of Bucher, requesting both compensatory and punitive damages. Plaintiff settled with Bucher and the Franciscan Friars and proceeded against the Archdiocese. The Archdiocese moved for dismissal of both claims, arguing that they had been untimely filed and, in the alternative, that plaintiff failed to state a claim, both because an employer cannot be vicariously liable for acts of sexual assault by its employees and because allowing a negligent retention, supervision and training claim against the Archdiocese would interfere unconstitutionally with the internal policies and practices of a religious institution. Plaintiff contended that the claims had been timely filed under ORS 12.117, which provides an extended limitation period for victims of child abuse, and that his allegations were sufficient to state a claim. The trial court held that the extended limitation period described in ORS 12.117 applies only to claims of intentional child abuse and, because there is no allegation that the Archdiocese intentionally engaged in such conduct, dismissed plaintiff's claims as untimely.

Plaintiff appeals, arguing that the trial court erred in concluding that the claims are not subject to ORS 12.117 and that his complaint states facts sufficient to entitle him to a trial on the merits. The Archdiocese contends that the trial court properly dismissed the claims against it. We conclude that, as to the *respondeat superior* claim, plaintiff's complaint fails to state facts that constitute a claim and that dismissal was proper on that ground; we do not address the parties' other arguments as to that claim. We also conclude that, as to the negligence claim, the extended limitation period of ORS 12.117 applies to negligence claims for "knowingly allowing, permitting or encouraging" child abuse, but that, because

plaintiff's complaint contains no such allegations, dismissal of the complaint was proper on timeliness grounds.

In reviewing the dismissal of a complaint, we look only to the pleadings, assume that all alleged facts are true and draw all necessary inferences in favor of the plaintiff. *Allen v. Lawrence*, 137 Or App 181, 186, 903 P2d 919 (1995), *rev den* 322 Or 644 (1996); *Dauven v. St. Vincent Hospital*, 130 Or App 584, 586, 883 P2d 241 (1994). On December 21, 1994, plaintiff filed his complaint. After several rounds of motions, plaintiff ultimately filed a second amended complaint, which contains the following relevant allegations:

"2.

"* * * At all relevant times, St. Anthony's Parish was an assumed business name of the Archdiocese. At all relevant times, Defendant Melvin Bucher (hereinafter 'Bucher') was a Franciscan priest, an employee of the Franciscans, the Archdiocese, and St. Anthony's, and acting in the course and scope of his employment.

"* * * * *

"3.

"From 1970 through 1972, on at least twenty occasions while Fearing was a minor, Bucher sexually assaulted Fearing by exposing himself to Fearing, kissing Fearing, touching Fearing's genitalia, and performing oral sex on Fearing (hereinafter the 'Assaults').

"4.

"On or about October, 1993, Fearing discovered the causal connection between the Assaults and the damages he suffered as a result of the Assaults, described more fully below.

"5.

"As a result of the Assaults, Fearing suffered physical and emotional injury, pain and suffering, emotional trauma, permanent psychological injury, as well as lost earning capacity and other economic damages * * *.

"* * * * *

"8.

"As part of his employment with the Archdiocese, the Franciscans, and St. Anthony's, Bucher was directed to fulfill the role of youth pastor and priest at St. Anthony's.

"9.

"Bucher improperly performed his employment duties as youth pastor and priest at St. Anthony's, by using and manipulating his fiduciary position, respect and authority as youth pastor and priest, in order to:

"A.) Identify Fearing's family as one which had an adolescent boy as a family member;

"B.) Meet Fearing's family and gain their trust and confidence as spiritual guide, youth pastor and priest;

"C.) Befriend Fearing's family;

"D.) Become a frequent social guest in the Fearing family home;

"E.) Gain the trust and confidence of the Fearing family as a valuable and trustworthy friend and mentor to Fearing, then a minor adolescent;

"F.) Gain the support, acquiescence and permission of Fearing's family for Bucher to spend substantial periods of time alone with Fearing;

"G.) Win the friendship, trust and admiration of Fearing himself;

"H.) Become Fearing's spiritual advisor, mentor and confessor;

"I.) Gain opportunity to socialize with Fearing and to spend time alone with him;

"J.) Physically touch Fearing;

"K.) Gain opportunity to commit the Assaults. (The above performance of employment duties as youth pastor and priest, including the Assaults, are hereinafter collectively referred to as the 'Manipulations').

"10.

"[The actions described in paragraph 9] were committed in connection with Bucher's employment, were committed

within the time and space limits of his employment as youth pastor and priest, were committed out of a desire, at least initially and partially, to fulfill his employment duties as youth pastor and priest, and * * * were generally actions of a kind and nature which Bucher was required to perform as youth pastor and priest.

"* * * * *

## "12.

"The Franciscans, the Archdiocese and St. Anthony's carried a duty to Fearing, as a minor parishioner being served by the ministry of St. Anthony's, the Franciscans, and the Archdiocese, to exercise reasonable care in the hiring, assignment, supervision and retention of its priests, including Bucher, lest minor adolescent parishioners, such as Fearing, be sexually molested, abused, and assaulted by priests, including Bucher.

## "13.

"St. Anthony's, the Franciscans, and the Archdiocese breached their duty to Fearing, creating an unreasonable risk of foreseeable harm to Fearing, and were negligent in one or more of the following particulars:

"A.   In failing to devise, implement and execute an effective process for psychological, emotional and spiritual screening of potential priests, including Bucher, before hiring, and for screening and rejecting individuals who were not good candidates for a vow of chastity and might accordingly be an unreasonable risk to engage in inappropriate sexual conduct outside the vow of chastity, including pedophilia;

"B.   In failing to devise, implement and execute an effective process for periodic or random psychological, emotional and spiritual screening and supervision of existing priests, including Bucher, and screening and removal of individuals, including Bucher, who were unsuccessful in their vow of chastity, who were having difficulty in fulfilling their vow of chastity, and might accordingly be an unreasonable risk to engage in inappropriate sexual conduct outside the vow of chastity, including pedophilia;

"C.   In failing, despite knowledge of a high incidence of pedophilia among its priests, and Catholic priests generally, to devise, implement and execute an effective process of educating and informing parishioners and parishes, including St. Anthony's, of the problem of pedophilia among priests, and educating and informing parishioners to recognize and report suspected pedophilia by priests;

"D.   In failing, despite knowledge of a high incidence of pedophilia among its priests, to design, implement and execute an effective process of educating, informing and training church staff, clerical staff, and pastoral staff, including at St. Anthony's, of the problem of pedophilia among priests, and educating, informing and training church staff, clerical staff, and pastoral staff, including at St. Anthony's, to recognize and report suspected pedophilia by priests;

"E.   In failing adequately to screen or evaluate Bucher for compliance with his vow of chastity, and in retaining him as an employee, youth pastor and priest, when St. Anthony's, the Franciscans and the Archdiocese knew or had reason to know, including knowledge of Bucher's having taken at least one leave of absence from the priesthood, that Bucher was having difficulty fulfilling his vows as priest, including his vow of chastity, and was accordingly an unreasonable risk to engage in inappropriate sexual conduct outside the vow of chastity, including pedophilia.

"14.

"As a result of the negligence of St. Anthony's, the Franciscans, and the Archdiocese as set out above, Fearing was the victim of the Manipulations and Assaults and suffered the injuries set out in paragraph 5 above."

■   We first examine plaintiff's contention that the trial court erred in dismissing his claim that the Archdiocese is liable on a theory of *respondeat superior*. In *Lourim v. Swensen*, 147 Or App 425, 936 P2d 1011 (1997), we addressed whether a complaint against the Boy Scouts of America and its local affiliate for vicarious liability for a Scout leader's acts of child abuse were sufficient to state a claim. The allegations of that complaint were nearly identical to those in plaintiff's complaint in this case in all material respects, and the plaintiff in *Lourim* asserted the same arguments in support of his claim that plaintiff asserts in this case. We held in *Lourim*

that the complaint failed to state a claim, because it lacked any allegations from which it reasonably could be concluded that the acts of manipulation and abuse that the employee allegedly did were of the nature that he had been hired by the Boy Scouts to perform. 147 Or App at 438. In this case, the complaint suffers precisely the same defect: Although the complaint contains the assertion that Bucher's manipulations were "generally of a kind and nature which Bucher was required to perform as youth pastor and priest," such a legal conclusion is insufficient. *Id.*; *see also Whelan v. Albertson's, Inc.*, 129 Or App 501, 508, 879 P2d 888 (1994) (trial court properly dismissed vicarious liability claim "because plaintiff did not identify and sufficiently plead a connection between" employee's tortious acts and acts that employee was hired to perform). As in *Lourim,* plaintiff in this case insists that his allegations are sufficient under this court's decision in *Erickson v. Christenson*, 99 Or App 104, 781 P2d 383 (1989), *appeal dismissed* 311 Or 266 (1991). But, as in *Lourim,* we decline to read *Erickson* that broadly. Accordingly, plaintiff's complaint fails to allege facts that constitute a *respondeat superior* claim, and, on that ground, the trial court's dismissal of the claim was proper.

■      We turn to plaintiff's contention that the trial court erred in dismissing his claim for negligent hiring, retention and supervision. Plaintiff contends that the trial court misconstrued ORS 12.117 to apply only to claims for intentional tortious conduct. According to plaintiff, the extended statute of limitations applies to claims based on conduct "knowingly allowing, permitting or encouraging child abuse" and that such claims include those for negligence, knowing or otherwise. Even if "knowing" conduct is required, plaintiff argues, the allegations of his complaint are sufficient, "because plaintiff has alleged conduct rising to the level of 'knowing.' " The Archdiocese contends that ORS 12.117 applies only to intentional torts and not to negligence of any sort. In the alternative, by way of cross-assignment, the Archdiocese contends that the dismissal of the negligence claim should be affirmed on the ground that allowing negligence claims of this sort against it would unconstitutionally interfere with the internal workings of a religious institution, in violation of the First Amendment to the United States Constitution.

We do not address the arguments of the Archdiocese on its cross-assignment, because we conclude that the trial court did not err in dismissing the negligence claim on statute of limitations grounds. Once again, we addressed this precise question in *Lourim*, holding that ORS 12.117 provides a three-year-from-discovery limitation period to actions based on conduct "knowingly allowing, permitting or encouraging" child abuse, and that the statute applies to negligence claims based on the "knowing" conduct described. 147 Or App at 443-44. In this case, as in *Lourim*, the complaint contains no allegations from which it reasonably may be inferred that the Archdiocese had actual knowledge of Bucher's acts of manipulation and abuse and then allowed, permitted or encouraged such abuse to continue. The complaint does contain a paragraph containing the legal conclusion that the allegations of another paragraph "constitute[ ] 'conduct knowingly allowing or permitting child abuse' within the meaning of ORS 12.117." That legal conclusion, however, is insufficient by itself. *Lourim*, 147 Or App at 444.

As for the cross-referenced paragraph, there are allegations that (1) the Archdiocese was negligent in failing to screen potential priests who "might" be an "unreasonable risk" to children; (2) the Archdiocese was negligent in failing to screen and supervise individuals such as Bucher, who were "having difficulty in fulfilling [their] vows * * * of chastity" and "might accordingly be an unreasonable risk" to children; (3) the Archdiocese was negligent in failing to educate its priests and parishioners, as well as its staff, about the problem of pedophilia among its priests "despite knowledge of a high incidence of pedophilia among its priests"; and (4) the Archdiocese was negligent in failing to screen or evaluate Bucher when it knew or had reason to know that he had taken a leave of absence and was "having difficulty fulfilling his vows as priest, including his vow of chastity, and was accordingly an unreasonable risk" to children.

Each of those allegations contains no more than the assertion that the Archdiocese knew enough about child abuse in the church generally that it *should have known* that Bucher actually presented a risk to children. But none contains an allegation that the Archdiocese had actual knowledge that Bucher was, in fact, abusing children and that it

then allowed, permitted or encouraged such abuse to continue. That, as we held in *Lourim,* is the only sort of conduct on which a claim subject to ORS 12.117 successfully may be predicated. Given that plaintiff's negligence claim is not based on conduct "knowingly allowing, permitting or encouraging child abuse," it is not subject to the extended limitation period of ORS 12.117 and therefore was properly dismissed as untimely filed.

Affirmed.