Argued and submitted September 28, 1998, judgment modified in part; otherwise
affirmed December 8, 1999

Ron BARRINGTON;
as Guardian ad litem for Teresa Barrington,
*Respondent,*

*v.*

Kent SANDBERG,
*Defendant,*

*and*

The CITY OF NORTH BEND,
*Appellant.*

(96 CV 0196; CA A98635)

991 P2d 1071

Jens Schmidt argued the cause for appellant. With him on the brief was Harrang Long Gary Rudnick.

Steven Plinski argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

ARMSTRONG, J.

Edmonds, P. J., concurring.

Kistler, J., concurring.

---

* Kistler, J., *vice* Warren, P. J., retired.

## ARMSTRONG, J.

Defendant City of North Bend appeals from a judgment in favor of plaintiff in this action for intentional infliction of emotional distress arising from a city police officer's treatment of a female Explorer Scout police cadet. Plaintiff is the father and guardian *ad litem* of the cadet. We modify the judgment to eliminate one item of damages and otherwise affirm.

Because the jury found in favor of plaintiff, we state the necessary facts most favorably to his position. In 1988, defendant established an Explorer cadet program in its police department. From the beginning, Sergeant Kent Sandberg was the supervisor of the program. The cadet joined it in September 1994, soon after turning 15, the minimum age for the program, because she wanted to learn more about a possible career as a police officer. She left the program in September 1995 as the result of Sandberg's conduct. Between September 1994 and June 1995, Sandberg engaged in five separate acts that the jury could conclude had inappropriate sexual characteristics. The details are not necessary to our decision. Defendant does not assert that the evidence is insufficient to support a verdict against Sandberg for intentional infliction of emotional distress. Rather, it argues that the evidence is insufficient to support a verdict based on *respondeat superior* against defendant.

In its first assignment of error, defendant asserts that the trial court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict on the ground that it could not be liable for Sandberg's acts. It argues that, as a matter of law, Sandberg was not acting within the scope of his employment when he committed the acts that are the basis for plaintiff's claim. In support, defendant relies on our decisions in *Fearing v. Bucher*, 147 Or App 446, 936 P2d 1023 (1997), *rev'd* 328 Or 367, 977 P2d 1163 (1999), and *Lourim v. Swensen*, 147 Or App 425, 936 P2d 1011 (1997), *rev'd* 328 Or 380, 977 P2d 1157 (1999). In those cases, we interpreted the Supreme Court's decisions in *Chesterman v. Barmon*, 305 Or 439, 753 P2d 404 (1988), and *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 757 P2d 1347 (1988), as holding that an employer was not liable for an

employee's sexual misconduct when it was not the kind of conduct that the employer had hired the employee to perform. We concluded that a Boy Scout leader[1] and a priest who sexually abused adolescents were acting outside the scope of their employments as a matter of law. We therefore affirmed trial court decisions dismissing the complaints against the employers.

Since the argument in this case, the Supreme Court has reversed our decisions in *Fearing* and *Lourim*, concluding that we had not correctly understood the meaning of, and relationship between, *Chesterman* and *G.L. Fearing v. Bucher*, 328 Or 367, 977 P2d 1163 (1999); *Lourim v. Swensen*, 328 Or 380, 977 P2d 1157 (1999). Under those recent decisions, it is clear that there was sufficient evidence in this case to submit the issue of *respondeat superior* to the jury. In *Fearing* and *Lourim*, the court emphasized that the issue is not whether the employee acted in the employer's interests when the employee committed the offensive acts themselves or whether those were the kind of acts that the employer hired the employee to perform.

> "Such circumstances rarely will occur and are not, in any event, necessary to vicarious liability. Rather, the focus properly is directed at whether the complaint contains sufficient allegations of [the employee's] conduct that was within the scope of [the employee's] employment that arguably resulted in the acts that caused plaintiff's injury."

*Fearing*, 328 Or at 376; *see also Lourim*, 328 Or at 386-87.

The essential point is that the performance of the employee's duties must be a necessary precursor to the misconduct and that the misconduct must be a direct outgrowth of, and have been engendered by, conduct that was within the scope of the employee's employment. It is not necessary that the misconduct itself be of a kind that the employer hired the employee to perform. *See Fearing*, 328 Or at 377.[2] The evidence in this case is sufficient to permit the jury to find that

---

[1] The Boy Scout leader was a volunteer and, therefore, not technically an employee. However, we treated the analysis in his case as being the same as that for a true employee. *See Lourim*, 147 Or App at 431 n 1.

[2] As in *Fearing*, the distinction between this case and *G.L.* is that in *G.L.* the sole connection between the employment and the misconduct was that the employment brought the tortfeasor and the victim together and gave the tortfeasor the opportunity to engage in the tortious activity. *See Fearing*, 328 Or at 376-77. In

Sandberg's work as supervisor of the police cadets was a necessary precursor to the misconduct and that the misconduct was a direct outgrowth of that work. All but one of the incidents occurred while Sandberg was performing his official duties of supervising the police cadets; the other incident occurred during a skiing trip that Sandberg planned for the cadets. The trial court did not err in submitting the case to the jury.

■　　　In its second assignment of error, defendant asserts that the trial court erred in denying its motion for directed verdict as to all claims based on events that occurred before January 27, 1995, which was 270 days before plaintiff mailed his tort claim notice.[3] Plaintiff responds that he alleged a continuing tort, not a series of discrete harms, and that the notice was timely because some of the events that together constituted the tort occurred fewer than 270 days before the notice. We generally agree with plaintiff's argument.

A continuing tort is based on "the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." *Davis v. Bostick*, 282 Or 667, 671, 580 P2d 544 (1978). In *Davis*, the plaintiff sought damages for the intentional infliction of emotional distress based on a number of incidents that occurred both before and after the period of the statute of limitations. The incidents before the limitations period included threatening and abusive telephone calls, breaking the plaintiff's nose, choking her, accusing her of having had an abortion, and threatening to kill her and her male friends. The trial court treated all of the incidents as parts of a continuing tort and instructed the jury that it could award damages for any emotional distress and anxiety that the plaintiff had suffered, without regard to the statute of limitations defense. 282 Or at 669, 671.

On appeal, the Supreme Court held that, although there was no doubt that the defendant's abusive behavior was all of a piece in intent and content, there could also be no

---

contrast, the jury could find that Sundberg used his role as the supervisor of the Explorer program to make the misconduct possible and that the abuse continued as long as it did because of Sundberg's role as the cadet's superior. That puts this case clearly within the *Fearing/Lourim* rule and distinguishes it from *G.L.*

[3] Although a plaintiff must normally submit a tort claim notice to a public body no later than 180 days after the injury, the statute provides an additional 90 days when the injured person is a minor. ORS 30.275(2).

doubt that the acts of assault and battery and the death threats were separately actionable because they individually caused harm. *Id.* at 672. It noted that the statute of limitations might well not begin to run until the defendant's conduct had culminated in the plaintiff's severe emotional distress. The trouble with that argument, however, was that "a broken nose, believable death threats, and a false accusation and rumormongering about an abortion not only ought to have produced some severe contemporaneous distress, but plaintiff proved that they did." Although the defendant's acts were continuous in that they made up a course of conduct that was capable of producing cumulative compensable harm, they were also discontinuous in that each had a beginning and an end, each was separated from the others by a period of relative quiescence, and each was capable of producing compensable harm. *Id.* at 673.

The court stated that it could "well imagine a case where the conduct has an identifiable total effect which is *a* product of the course of conduct," but on the evidence *Davis* was not such a case. "Plaintiff's theory is that she ought to recover now for a series of wrongs, but her evidence is that she was harmed by each act in the series. We do not think that she was entitled to ride out the storm and lump sum her grievances." The court reversed the verdict for the plaintiff because the trial court erred in striking the defendant's statute of imitations defense. *Id.* at 674-75 (emphasis in original).

The differences between *Davis* and this case are apparent from the record. An essential element of the tort of intentional infliction of emotional distress is that the injured person in fact suffer such distress. Until the cadet suffered that distress, she did not have a claim for that tort. *See Patton v. J. C. Penney Co.*, 301 Or 117, 719 P2d 854 (1986). The physical contact between Sandberg and the cadet was different in quality from that in *Davis* and did not itself cause the damage. Defendant emphasized in its cross-examination of the cadet that several of the incidents did not cause her emotional distress at the time that they occurred. Although, according to the cadet's testimony, she felt some stress from the incidents, it was not until she first talked about them to a friend in July 1995 that their full effect came out. In the process of describing what Sandberg had done, the cadet became increasingly upset, started crying, and eventually vomited all

over her own clothes and her friend's sheets. She thereafter told her parents and began counseling. Her parents consulted an attorney, who soon afterwards gave defendant a tort claims notice and eventually filed this lawsuit. The jury could have found that Sandberg's actions constituted a continuing tort and that the cadet did not suffer severe emotional distress from any of them until July 1995. In that case, under *Davis* the individual incidents were not separately actionable and the trial court correctly denied defendant's motion for a directed verdict as to the incidents that occurred more than 270 days before the tort claims notice.

This case is similar to *Griffin v. Tri-Met*, 112 Or App 575, 581-82, 831 P2d 42 (1992), *rev'd in part on other grounds* 318 Or 500, 870 P2d 808 (1994), in which each incident of a series did not by itself support a claim but the incidents as a whole were a systematic pattern of conduct that led to a specific injury. Because the incidents constituted a course of conduct, all of them were part of the basis of the claim even though some occurred before the tort claims notice period.

■ Defendant's third and fourth assignments of error involve the court's action in submitting specific categories of damages to the jury. In the third assignment, defendant attacks the court's denial of its motion to strike the claim for past medical expenses. It points out that plaintiff, the cadet's father, failed to file the statement that ORS 30.810 requires. That statute provides:

"(1) When the guardian ad litem of a child maintains a cause of action for recovery of damages to the child caused by a wrongful act, the parent, parents, or conservator of the estate of the child may file a consent accompanying the complaint of the guardian ad litem to include in the cause of action the damages as, in all the circumstances of the case, may be just, and will reasonably and fairly compensate for the doctor, hospital and medical expenses caused by the injury.

"(2) If the consent is filed as provided in subsection (1) of this section and the court allows the filing, no court shall entertain a cause of action by the parent, parents or conservator for doctor, hospital or medical expenses caused by the injury."

Defendant argues that it is implicit in the statute that a failure to file the required statement means that there is no basis for the guardian *ad litem* to recover the parent's medical expenses in an action brought on behalf of the child. It points out that a claim for those expenses normally belongs to the parent, not to the child. *See Palmore v. Kirkman Laboratories*, 270 Or 294, 305-06, 527 P2d 391 (1974). Plaintiff responds that in this case the parent and the guardian are the same person and that, therefore, the court should imply that the parent consented to include those damages in this case.

We agree with defendant. The statute provides an express way to include the parent's damages in the child's case; it does not provide an implicit way to do that. Whether or not plaintiff would be embarrassed, as he suggests, to argue that the judgment in this case is not a bar to a subsequent attempt by him to recover those damages, such an argument would not be patently wrong. In this case, plaintiff is acting as the cadet's guardian; he could bring a subsequent case in his own right. He could well argue that, in the absence of the written consent, the only issues decided in this case are those that belong to the cadet personally. The legislature did not intend for defendant to rely solely on plaintiff's sense of embarrassment to protect against a possible double recovery. The trial court erred in entering judgment for the cadet's past medical expenses.

■        Finally, defendant assigns error to the trial court's denial of its motion for a directed verdict on the claim for future medical expenses. Those expenses involved the cadet's need for counseling over the remainder of her life. Defendant argues that there is no evidence that would allow the jury to reduce the total cost of therapy over many years to its present value. Plaintiff's only response is that the court did not rule on defendant's motion, so there is nothing for us to review on appeal.

When the court stated that it would let the jury decide the issue, it effectively denied defendant's motion. The court also concluded that the amount that plaintiff sought in his complaint was an adequate approximation of the present value of the future counseling that the cadet would need and

denied plaintiff's motion to amend the complaint to seek the total cost of the counseling without a reduction to its present value.[4] We conclude that the court did not err. In *Brokenshire v. Rivas and Rivas, Ltd.*, 142 Or App 555, 563-64, 922 P2d 696 (1996), *rev dismissed* 327 Or 119, 957 P2d 157 (1998), the plaintiff presented evidence about her life expectancy, work years until retirement, and projected lifetime earnings both before and after her injury; all of that evidence was relevant to the amount of her lost earning capacity. She did not present evidence concerning the proper interest rate or how to use it to reduce her damages to their present value. We held that the evidence was sufficient to submit the issue of lost earning capacity to the jury. Expert testimony on how to compute present value, and on the various assumptions involved in the computation, would have been admissible, but it was not necessary.

In this case, the trial court instructed the jury on the cadet's life expectancy, and there was evidence of her total future medical expenses. Under *Brokenshire*, it was not necessary that there be evidence on methods of computing present value or on the appropriate interest rate to apply in doing so. Defendant's other arguments on this point are directed to the trial court's failure to instruct the jury adequately on the subject, but it does not assign error to any instruction that the court gave or failed to give. The trial court did not err in denying the motion for directed verdict on these damages.

Judgment modified to delete damages for past medical expenses; otherwise affirmed.

**EDMONDS, P. J.,** concurring.

I agree with the lead opinion's result but not with its reasoning concerning the second assignment of error. Plaintiff argues that the elements of his claim for intentional infliction of emotional distress (IIED) were not completed until July 1995 when the cadet suffered severe emotional distress as the result of discussing the series of events that had

---

[4] The court did not, as defendant suggests, hold that that amount *was* the present value of plaintiff's claim; rather, it held that that amount was the maximum that the jury could award.

begun in September 1994 with a friend. Plaintiff explains in his brief:

> "[The cadet's] testimony that each episode 'bothered' or 'distressed' her does not raise Sergeant Sandberg's conduct to the level of actionable intentional infliction of emotional distress. It was Sergeant Sandberg's continued course of conduct that gave rise to [the cadet's] injury. The episodes that defendant sought to exclude were not separate torts; they were part of a course of conduct that, ultimately caused the girl severe emotional distress."

Plaintiff gave the tort claims notice required under ORS 30.275(2) in October 1995. The thrust of my major disagreement with the lead opinion's analysis is that the incidents that occurred in 1994 as alleged and proven by plaintiff are not susceptible to a continuing tort characterization and are not admissible in evidence to prove the elements of the tort that he says accrued in July 1995. Plaintiff's position on appeal is that, although each of the separate incidents alleged in his complaint caused the cadet some distress,[1] her stress did not become *severe* until she discussed the incidents with a friend in July 1995. According to plaintiff, his action became "complete" on that date. The majority errs when it characterizes plaintiff's single claim as a continuing tort and endorses the use of the evidence of the 1994 incidents to prove a tort that accrued in July 1995.

In discerning whether a tort is a "continuing tort," we must draw a distinction between two categories of factual circumstances. The first category involves repetitious, discrete acts that result in similar but separate injuries that may accumulate in effect. A claim for each injury accrues when the injury occurs. *See Griffin v. Tri-Met*, 318 Or 500, 870 P2d 808 (1994) (reasoning that a claim *accrues* when a person may sue another person). Cases of that type are not susceptible to a continuing tort analysis. The second category of cases involves an injury that is due to no single act or occurrence but that accumulates and is continuous in nature. When this type of conduct and injury is involved, a plaintiff may bring a claim at any time while the injury is continuing

---

[1] According to plaintiff's complaint, the incidents occurred in the fall of 1994, the spring of 1995 and in June 1995.

or within the notice or limitation period after its conclusion. This case falls within the first category.

  *Holdner v. Columbia County*, 51 Or App 605, 627 P2d 4 (1981), is an example of both categories. In that case, the plaintiff brought an action against the defendant county and two of its officers for damages caused by runoff from the county road. After the defendants had undertaken repairs on the roads in the area of the plaintiff's property in 1974, the plaintiff first noticed that water from the roads was draining onto his property. His contacts for the next three years with the county were aimed at persuading it to correct the problem, but he had no success. On December 22, 1977, the plaintiff sent a tort claim notice pursuant to ORS 30.275 to the defendants. He filed his complaint for damages in January 1978. The trial court ruled that the plaintiff had failed to give timely notice of his claim under ORS 30.275.

  On appeal, we reversed in part. We ruled that "[t]he road repairs themselves were clearly discrete acts which ended more than two years before plaintiff brought his action and 180 days before he presented his notice." *Holdner*, 51 Or App at 612. The claims based on the repairs are an example of the first category. As to those claims, the plaintiff was barred by ORS 30.275. However, we held that the tort claim notice was timely as to the ongoing failure of the county to maintain its ditches and culverts "[b]ecause there is no *single* accident or occurrence giving rise to the claim." *Holdner*, 51 Or App at 613 (emphasis in original). The ongoing negligence of the county is an example of the second category. Because the failure of the county to maintain its ditches and culverts had continued within the period covered by the notice, the notice was timely.

  Here, plaintiff's theory of his case is that a single tort of IIED accrued in July 1995 when the cadet suffered severe emotional distress. Plaintiff asserts a continuing tort theory in order to rely on the discrete incidents in 1994 and 1995 as incidents of socially intolerable conduct that resulted in the severe distress that allegedly occurred in July 1995. The snag in plaintiff's theory is that his tort claim notice is timely only as to the incidents of loss or injury that occurred in 1995. The

purpose of ORS 30.275 is to permit a reasonable investigation of the operative facts relied on for the claim. *See Urban Renewal Agency v. Lackey*, 275 Or 35, 549 P2d 657 (1976). In *Davis v. Bostick*, 282 Or 667, 674, 580 P2d 544 (1978), regarding the contention that an IIED claim was a continuing tort, the court said, "[d]esignating a series of discrete acts, even if connected in design or intent, a 'continuing tort' ought not to be a rationale by which the statute of limitations policy can be avoided[.]" Similarly, designating defendant's conduct as "continuing" ought not to be a rationale by which the policy of ORS 30.275 can be avoided.

The discrete incidents in *Holdner* are like the 1994 discrete incidents alleged by plaintiff in this case. They had beginnings and ends, and at least one, the November 1994 incident, caused injury and was separately actionable. Consequently, ORS 30.275 operates to ban their use for a claim that accrues in July 1995 and for which notice was given in October 1995.

The lead opinion compares this case to *Griffin v. Tri-Met*, 112 Or App 575, 831 P2d 42 (1992), *rev'd in part on other grounds* 318 Or 500, 870 P2d 808 (1994). In *Griffin*, the plaintiff sued his employer for discrimination on account of a physical impairment under ORS 659.425(1). His employment constructively ended by December 1988 when he did not return to work. Before trial, the employer moved to strike eight of the allegations in the plaintiff's pleadings on the ground that the operative facts giving rise to the allegations had occurred outside the notice period of ORS 30.275. The trial court granted that motion. On appeal, the employer assigned error to the trial court's "denial of [the employer's] motion to exclude evidence of conduct that occurred more than 180 days before plaintiff gave notice under the Oregon Tort Claims Act (OTCA)." *Griffin*, 112 Or App at 580. The employer argued that, "even if admission of that evidence was proper as tending to prove discriminatory intent, the court nevertheless erred by not giving an instruction limiting the jury's consideration of it." *Id.* We noted that

"[f]ive of the allegations stricken from plaintiff's second amended complaint were based on occurrences in May[ ] 1988. [The employer] stipulated that proper notice was

given on July 6, 1988. Therefore, those allegations and the evidence supporting them were properly before the jury. We therefore need only consider the allegations and evidence of the three events that occurred before January 6, 1988."

*Id.* (footnotes omitted).

In our analysis, we referred to *Shives v. Chamberlain*, 168 Or 676, 126 P2d 28 (1942), *Holdner* and *Davis* as examples of cases describing the concept of a continuing tort. We focused on the concept expressed in *Davis* that the heart of the continuing tort concept is that recovery is for the cumulative effect of wrongful behavior and not for discrete acts of tortious conduct. We observed that "the October and November, 1987 acts [of discrimination that the plaintiff suffered], although separate incidents, are not the type of discrete, permanent events that would likely support separate actions for wrongful discrimination." *Griffin*, 112 Or App at 582. Consequently, we held that those events "can be reasonably construed as elements of a systematic pattern of conduct, aimed at causing plaintiff's eventual termination" and that the evidence was admissible for that purpose. *Id.*

When the Supreme Court reviewed our decision in *Griffin* to determine whether attorney fees and costs were included within the liability limits of the OTCA, it had to decide which version of the OTCA applied. In order to make that determination, the court had to determine when the plaintiff's claim accrued. The court held that the plaintiff's claim accrued at least by the time that the plaintiff had filed his complaint with the Bureau of Labor and Industries (BOLI). According to the dissenting opinion, the BOLI complaint was filed in June 1988.

The Supreme Court's opinion casts doubt on our reasoning that *Griffin* should be characterized as a continuing tort case that culminated in December 1988. We implied in our opinion that the plaintiff's injury accrued when he was constructively discharged by December 1, 1988. However, in discussing the accrual of the plaintiff's claim, the Supreme Court held that the plaintiff's claim accrued at some point between October 1987 and June 1988 when the plaintiff filed

his complaint with BOLI.[2] The import of the court's reasoning is that the plaintiff had alleged discrete events, one of which caused the accrual of his claim before his constructive discharge in December 1988. When discrete events give rise to the accrual of an earlier claim, those events cannot become the basis of the accrual of a subsequent claim. The accrual of any claim springs from its underlying operative facts and not from the choice of legal theory.

Here, plaintiff concedes that the cadet's injury was not ongoing in 1994. Rather, he contends that the cadet's claim did not accrue until July 1995. However, Sandberg's conduct in November 1994 constituted a discrete tort. His conduct was actionable as an unconsented touching at that time because both inappropriate conduct and injury occurred. Plaintiff admits in his brief that the cadet testified that she was "bothered" by Sandberg's touching of her breast area in November 1994. It follows that plaintiff's action for the cadet's "loss or injury" for that incident accrued at that time under ORS 30.275. Under the reasoning in *Holdner* and *Griffin*, the evidence of the 1994 incidents is inadmissible to prove a tort in 1995 because those operative facts did not occur within the time period covered by the tort claims notice.

Having said that, the record made before the trial court frames a different issue. In response to defense counsel's motion for a directed verdict that the trial court understood as a motion to strike the allegations of incidents that occurred before January 1995, plaintiff told the trial court that the evidence put on by plaintiff "shows the continuing course of conduct and a pattern of what went on for a significant period of time." In response, defense counsel told the trial court, in part:

> "Turning to the merits of the argument, in the absence of any case law support for [plaintiff's counsel's] argument, I'm not aware of any case law that would hold that, under the facts of this case, [the cadet] can wait and allow these allegedly tort[i]ous acts to continue over an extended period

---

[2] The Supreme Court's reasoning was based on the plaintiff's fourth amended complaint, while our reasoning was based on the plaintiff's second amended complaint.

of time, and wait until the last one to give the City of North Bend Tort Claims Notice.

"The whole purpose, as the Court knows, of the Tort Claims Notice is to put the public body on notice and give them an opportunity to investigate at once. If you allow these things to extend over periods of time, the purpose of the statute is defeated."

Further discussion ensued between counsel and the trial court. Finally, defense counsel told the trial court:

"I would agree that the jury could hear the evidence, but what I would ask the Court to do if my motion is granted would be to instruct the jury that they may not award damages to those issues—if those allegations have been withdrawn from the complaint, they may not award damages on anything prior to January 27, 1995."

Ultimately, defendant's motion became a motion to limit plaintiff's damages to incidents that occurred within 270 days of when notice was given under ORS 30.275. Defendant's original motion was conceptually different from his ultimate motion. Originally, the motion asked the trial court to rule that plaintiff could not rely on the 1994 incidents of socially intolerable conduct to prove the elements of the claim that accrued in 1995. The motion as modified permitted plaintiff to rely on evidence of socially intolerable conduct that occurred outside the ORS 30.275 tort claims notice period and asked only that the jury not be allowed to award damages as to the 1994 incidents. Whether damages are recoverable for injuries that precede an applicable statute of limitations period is the kind of issue that we alluded to in *Holdner* and the cases cited therein. But that is not the issue that defendant raises on appeal. Defendant argues on appeal that this case is controlled by *Davis,* a case about whether a plaintiff can rely on evidence of events that occur outside the statute of limitations period to prove an IIED claim. Because defendant ultimately asked only that the trial court limit plaintiff's damages, it has not preserved the argument that it makes on appeal. ORAP 5.45(2). Consequently, I would affirm on the second assignment of error, but only for that reason.

**KISTLER, J.,** concurring.

The lead opinion and Judge Edmonds' concurring opinion divide over the question whether Sandberg's actions constituted a continuing tort and how the decision in *Davis v. Bostick*, 282 Or 667, 580 P2d 544 (1978), bears on that issue. Although I agree with portions of both opinions, I do not agree with either opinion completely and accordingly write separately.

In *Davis*, the trial court relied on the continuing tort doctrine to prevent the jury from considering whether some of the acts that gave rise to the plaintiff's intentional infliction of emotional distress (IIED) claim were outside the statute of limitations. 282 Or at 671. On appeal, the Supreme Court held that the discrete nature of the defendant's acts did not produce the sort of undifferentiated harm that would permit a court to say, as a matter of law, that the defendant was barred from asserting a limitations defense. *See id.* at 672-73. The fact, however, that *Davis* held that the jury should be able to consider the defense did not mean that the defendant was entitled to a directed verdict on it. That question was for the jury.[1]

This case presents the mirror image of the question in *Davis*. The question here is not whether defendant is precluded from asserting a limitations defense to plaintiff's IIED claim. Rather, it is whether plaintiff is precluded from basing her IIED claim on all of defendant's conduct. The former question required the court in *Davis* to construe the facts in the light most favorable to the defendant. The latter question requires that we construe the facts in the light most favorable to plaintiff—the standard we customarily apply in deciding whether a defendant is entitled to a directed verdict on a plaintiff's claim.

Applying that standard, I would hold that the evidence permitted the jury to find that Sandberg engaged in a pattern of intentional conduct that did not cause the level of

---

[1] Other courts have reached the opposite conclusion. In *Curtis v. Firth*, 123 Idaho 598, 850 P2d 749 (1993), the Idaho Supreme Court upheld the trial court's decision not to instruct the jury on a limitations defense to an IIED claim because, as a matter of law, the pattern of discrete incidents constituted a continuing tort.

distress necessary to state an IIED claim until some time within the limitations period. The point is not that plaintiff's claim constitutes a continuing tort as a matter of law or even that the jury should be asked to decide whether it does; the court rejected the first proposition in *Davis* and cast significant doubt on the second.[2] *See* 282 Or at 674. Rather, the point is that, as a matter of causation, the jury reasonably could find that defendant's pattern of conduct did not cause plaintiff to suffer severe distress—a necessary element of the tort of IIED—until some time within the limitations period. *Cf. Bustamento v. Tucker*, 607 So 2d 532, 538 (La 1992) (even though a pattern of discrete incidents may not be sufficient individually to cause the severe distress necessary to give rise to an IIED claim, they may do so cumulatively). Accordingly, the trial court correctly denied defendant's directed verdict motion.

---

[2] The doctrine of "continuing tort" typically refers to "wrongful conduct that is repeated until desisted, and each day constitutes a separate cause of action." *See Curtis*, 123 Idaho at 603, 850 P2d at 754; *cf. Shives v. Chamberlain*, 168 Or 676, 685-87, 126 P2d 28 (1942). When applicable, the doctrine tolls the statute of limitations on otherwise actionable conduct until that conduct stops. *Id.* Although *Davis* held that the doctrine did not apply to the plaintiff's IIED claim in that case, it did not hold that the plaintiff was precluded from proving, as a factual matter, that the defendant's repeated conduct did not cause her severe emotional distress until some time within the limitations period.