Argued and submitted September 25, 2000, affirmed July 18, 2001

# COLUMBIA COUNTY,
a political subdivision of the State of Oregon,
*Plaintiff,*

*v.*

# Doug SANDE
and Marlene Sande,
husband and wife,
*Defendants.*

# Doug SANDE
and Marlene Sande,
husband and wife,
*Appellants,*

*v.*

# COLUMBIA COUNTY,
a political subdivision of the State of Oregon,
*Respondent.*

## 96-2186; A106269

28 P3d 657

Mark A. Gordon argued the cause and filed the briefs for appellants.

Ruth Casby Rocker argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner LLP.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

This appeal arises out of two consolidated cases concerning a dispute between Columbia County and Doug and Marlene Sande over the lawfulness of the Sandes' use and occupancy of a horse stable and arena. In the first case, the county sued to enjoin the Sandes from occupying the stable and arena until they obtained a building permit and certificate of occupancy. The Sandes counterclaimed, alleging negligence and abuse of process. In the second case, the Sandes petitioned for a writ of mandamus requiring the county to issue the building permit and certificate of occupancy. The trial court concluded that, as a matter of law, the county was obligated to issue the permit and certificate of occupancy; accordingly, it entered summary judgment against the county on its claim for injunctive relief and in favor of the Sandes in their mandamus action. The trial court also concluded, however, that the Sandes' counterclaims were time barred. The Sandes appeal the entry of summary judgment dismissing those counterclaims. We affirm.

The relevant facts are undisputed. In 1990, the Sandes applied to the county for a permit to construct a 10,000-square-foot building on their property. A county building official and the local fire marshal inspected the site and learned that the building was to be a riding arena and stable. The fire marshal recommended that the Sandes be required to provide a firefighting water supply, including the placement of a fire hydrant at the intersection of their driveway and a nearby road. The county issued a permit for construction of the foundation only, subject to the conditions recommended by the fire marshal. The following month, the county issued a construction permit for the building, subject to the same conditions.

The Sandes completed the construction of the building and requested an inspection to obtain a certificate of occupancy. On May 15, 1991, the county refused to issue the certificate, because the Sandes had not yet complied with the conditions of the permit. The county notified the Sandes that they had 45 days to comply. Eventually, the building permit expired, and the Sandes had not complied.

In September 1991, the county issued a second permit authorizing the construction of the building, subject to the fire marshal's conditions. By its terms, the permit expired 180 days after issuance. The 180-day period passed without compliance.

A year later, the Sandes asked for a reinspection. The Sandes still had failed to comply with the fire marshal's conditions. The county gave the Sandes an additional 30 days to comply. The county reinspected a total of 12 times in the next two years, but each time the Sandes had failed to comply with the conditions of the construction permit.

Meanwhile, in February 1993, the assistant fire chief inspected the property, observed that it remained in violation of the permit conditions, and notified the Sandes that their continued noncompliance could result in the issuance of a citation in municipal or district court. When the Sandes continued to fail to comply, the county began to issue citations in 1994. Doug Sande was arrested twice for contempt and for failure to appear on the citations. Ultimately, the charge of contempt was dropped, and Sande was ordered to pay $545 in fines and restitution for inspection costs. The Sandes still declined to install the required firefighting water supply, including a fire hydrant.

In November 1996, the Sandes placed an advertisement in the local newspaper for a "Schooling Show" to be held in the arena on November 30. On November 27, 1996, the county sought and obtained a temporary injunction prohibiting the Sandes from using the building without a certificate of occupancy.

On May 22, 1997, the Sandes notified the county of their intent to seek damages for (1) the county's refusal to issue a certificate of occupancy; (2) the county's accusations that they had violated the law; and (3) the November 27, 1996, injunction. They later answered the county's complaint, asserting the three counterclaims that are the subject of this appeal. In their first counterclaim, the Sandes asserted that the county was negligent in denying a certificate of occupancy for the building in May 1991, because a fire hydrant was not required by local ordinance or state statute. In their second counterclaim, the Sandes asserted that the

county was negligent in filing its motion for a temporary injunction seeking to prevent them from using their property. In their third counterclaim, the Sandes alleged that the filing of the claim for injunctive relief was an abuse of process. Meanwhile, the Sandes filed a petition for a writ of mandamus requiring the county to issue the certificate of occupancy.

The trial court consolidated both matters. The county moved for summary judgment on the Sandes' mandamus petition. The county argued that, on the undisputed facts, the Sandes were not entitled to relief as a matter of law, because, under the applicable ordinances and statutes, they were required to comply with the firefighting water supply conditions. The county relied on, among other things, ORS 479.200, which provides that any public buildings in excess of 5,000 square feet must have a readily available water supply within 500 feet of the building and of sufficient capacity to supply firefighting equipment of a specified size. The Sandes filed motions for summary judgment on their mandamus petition and on the county's claim for injunctive relief. They argued that the applicable ordinances and statutes do not require the firefighting water supply measure that the county demanded. They also argued that the county could not rely on ORS 479.200, because it had not been pleaded as a basis for the county's requested relief. The trial court ultimately agreed with the Sandes. It rejected the county's reliance on ORS 479.200 on the ground that the county apparently had not relied on that statute at the time that it imposed the permit condition and held that the county erred in demanding that the Sandes comply with it. The court dismissed the county's claim for injunctive relief and entered a peremptory writ of mandamus requiring the county to issue a certificate of occupancy.

The county also moved for summary judgment as to the Sandes' counterclaims. It argued that each of the counterclaims was time barred, in that each ultimately arose out of the denial of a certificate of occupancy, which occurred six years before the filing of the claims. In the alternative, the county argued that each of the claims failed on the merits as a matter of law. Among other things, the county argued that

it acted reasonably in reading ORS 479.200 to require the installation of a firefighting water supply. The trial court granted the county's motion on statute of limitations grounds. It is that decision that the Sandes challenge on appeal.

We address the court's decision with respect to each counterclaim in turn. We view the evidence in the record on summary judgment in the light most favorable to the Sandes, the nonmoving party. Summary judgment was appropriate if there was no genuine issue of material fact and the county was entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

■ We begin with the first counterclaim, which asserts that the county was negligent in denying the Sandes a certificate of occupancy in May 1991. The Sandes acknowledge that they filed their counterclaim six years after the denial of the certificate. They insist that the claim nevertheless is timely, because the county's continuing insistence on compliance with the water supply condition amounted to a "continuing tort" up to the time of filing.

We conclude that the trial court did not err in determining that the filing of the first counterclaim was time barred. A negligence claim brought against a public body must be commenced within two years after the alleged injury or loss. ORS 30.275(8). In this case, the injury of which the Sandes complain is the act of denying the certificate of occupancy. That act occurred May 15, 1991. The Sandes did not attempt to provide the required tort claim notice until more than six years later, on May 22, 1997, and they did not file the counterclaims until after that. Clearly, the filing of the first counterclaim was untimely.

■ The Sandes' attempt to characterize their counterclaim as one for a "continuing tort" is unavailing. Courts have recognized that when there is an ongoing duty of care on the part of a defendant, the continued failure to exercise that duty may be characterized as a "continuing tort." *See Lesch v. DeWitt*, 317 Or 585, 858 P2d 872 (1993); *Barrington v. Sandberg*, 164 Or App 292, 296, 991 P2d 1071 (1999). In this

case, as we have noted, the counterclaim pleads negligence based on a discrete event: the denial of the certificate of occupancy. It does not allege negligence on the basis of the county's continued enforcement of the building permit conditions; indeed, that is the subject of the other two counterclaims. We reject the Sandes' argument without further discussion.

■ We turn to the second counterclaim, for negligence in initiating the action for injunctive relief. The Sandes argue that the trial court erred in concluding that that counterclaim was time barred, because the negligent act was the initiation of the action itself, which did not occur until November 1996, only approximately seven months before the filing of the counterclaim. The county insists that the counterclaim is time barred, because it is "derivative" of the first counterclaim, which clearly is time barred.

■ We agree with the Sandes. Although the county is correct in asserting that a plaintiff may not avoid a statute of limitations merely by alleging different or additional injury that results from a tortious act, *see Raethke v. Oregon Health Sciences Univ.*, 115 Or App 195, 199, 837 P2d 977 (1992), *rev den* 315 Or 442 (1993) ("one may not avoid the Statute of Limitations by characterizing the harm as two different kinds of injuries rather than one injury that has caused more damage than was originally contemplated"), this is not such a case. The gravamen of the second counterclaim is that the Sandes suffered injury as a result of the county's act of seeking—and temporarily obtaining—injunctive relief in 1996, not the county's denial of the certificate of occupancy five years earlier.

■ The county insists that, in any event, the trial court correctly dismissed the counterclaim, because it failed as a matter of law on the merits.[1] According to the county, to prevail on the counterclaim, the Sandes must establish at least a genuine issue of material fact that, in seeking to enforce the building permit condition, it acted unreasonably. The county asserts that, under ORS 479.200, a firefighting water supply

---

[1] The county does not argue that a claim against a local government for negligently seeking enforcement of an unappealed permit decision does not exist under Oregon law. Our opinion should not be read to hold that such a claim in fact exists.

is required for all public buildings in excess of 5,000 square feet. A "public building," the county notes, is broadly defined as a "building in which persons congregate for civic, political, education, religious, social or recreational purposes." ORS 479.010(1)(i). At the very least, the county concludes, given the undisputed facts as to the nature of the Sandes' building and its intended use, it was reasonable for the county to conclude that the building was subject to the statute.

The Sandes respond with two arguments. First, although they acknowledge that, if ORS 479.200 were applicable, the county would be correct, they assert that it is inappropriate for the county to rely on the statute, because there is no evidence that the county actually was motivated by compliance with that particular statute at the time that it first imposed the firefighting water supply condition. Second, they argue that the county's reliance on ORS 479.200 is unavailing, because, in fact, theirs is not a "public building" within the meaning of the statute.

We agree with the county. The fact that the county may not have considered ORS 479.200 at the time it first imposed the firefighting water supply condition is irrelevant. The determinative issue is the objective reasonableness of the county's act of asserting a claim for injunctive relief. Likewise, whether ORS 479.200 actually justifies the imposition of the condition is beside the point. The issue is whether the county reasonably construed the statute to apply. The Sandes offer no argument that, given the undisputed facts about the nature of their building and its intended uses, it was unreasonable for the county to have read ORS 479.200 to apply to it.

We turn to the final counterclaim, for abuse of process in seeking the injunction. Once again, the Sandes argue that the trial court erred in concluding that the counterclaim is time barred. As in the second counterclaim, this one is predicated on the act of filing the injunction action itself, not the denial of the certificate of occupancy some years earlier. For that reason, the counterclaim was not untimely filed.

The county, however, asserts that, like the second counterclaim, this one also is untenable on the merits as a

matter of law. Under Oregon law, the tort of "abuse of process" is the perversion of a process that is regular on its face to a purpose for which the process is not intended. *Larsen v. Credit Bureau*, 279 Or 405, 408, 568 P2d 657 (1977); *Clausen v. Carstens*, 83 Or App 112, 118, 730 P2d 604 (1986). We have described it as "the use of the process as a club by which to extort something unrelated to the process from the other party." *Clausen*, 83 Or App at 118. As such, to plead a claim for abuse of process, a plaintiff must allege some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding. *Larsen*, 279 Or at 408; *see also Yanney v. Koehler*, 147 Or App 269, 935 P2d 1235, *rev den* 325 Or 368 (1997).

In this case, the Sandes alleged that the process invoked by the county, its suit to prevent the Sandes from using the arena, was for the purpose of causing the Sandes to comply with arbitrary conditions that are not required by law. Although the trial court ultimately held that the county was incorrect that the Sandes were required to have a fire hydrant, the record on summary judgment does not reveal that the county had any purpose other than to prevent the Sandes from using their property illegally or any motive other than to enforce what it mistakenly believed to be the law. It matters not that the county did not prevail on the merits; whether its claim had merit, it was not an abuse of process, because it acted for the very purpose that the process was intended to serve.

We conclude that the trial court did not err in entering summary judgment on each of the Sandes' three counterclaims.

Affirmed.